[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This marital dissolution action was commenced by complaint dated September 25, 1995. Based on the evidence adduced at trial, the court makes the following findings and orders.
Susan Summit, nee Susan Melesky, and Michael Summit were married on May 19, 1991 in Loxahatchee, Florida. They have one child, Cira, who was born on July 28, 1992. No other children have been born to the plaintiff since the date of the marriage. The court has jurisdiction over the parties and the marriage.
Mrs. Summit is thirty four years old and a high school graduate. In addition, following high school she attended a six month course from which she received a diploma in word CT Page 10597 processing. In 1987, when the parties first met, Mrs. Summit was working at the Newington Children's Hospital as an admitting supervisor netting approximately two hundred fifty ($250) dollars a week. She left Newington Children's Hospital to take employment as an accounts payable and payroll manager with Medical Technology Nursing Pool, a company which supplied nurses to health care providers. At this employ, Mrs. Summit netted approximately five hundred ($500) dollars weekly. Mrs. Summit continued this employment until she quit in order to move to Florida to live with Mr. Summit. At the time she left Connecticut, Mrs. Summit owned her furniture, two cars, and approximately two thousand ($2000) dollars in the bank.
Mr. Summit is forty five years old and has five years of college education. While he has discomfort and some postural difficulties resulting from scoliosis, degenerative disc disease, and a fractured hip, these maladies have not prevented him from normal life's activities including employment.
Mr. Summit's previous marriage of approximately ten years ended on April 10, 1987. At the time of the marital dissolution, he received a settlement of approximately four hundred thousand ($400,000) dollars, consisting of lump sum alimony of one hundred thousand ($100,000) dollars, a property settlement of one hundred thousand ($100,000) dollars, savings of approximately one hundred ten thousand ($110,000) dollars, retirement assets of approximately forty eight thousand nine hundred ($48,900) dollars, stocks worth twenty two hundred ($2200) dollars, a six thousand ($6000) dollar boat, real estate in Deltona, Florida with approximately twenty thousand ($20,000) dollars in equity, and a one half interest in a limited partnership. Between the time of his 1987 marital dissolution and the subsequent marriage of the parties in 1992, Mr. Summit sold and purchased assets, changing their character, but not substantially altering the value of the these pre-marital holdings. In 1990, he purchased the Loxahatchee home in which he presently resides for approximately two hundred thirty two thousand, five hundred ($232,500) dollars, with a mortgage of one hundred seventy eight thousand ($178,000) dollars. A January, 1997 appraisal of this property indicates that its value has diminished to one hundred ninety four thousand, five hundred ($194,500) dollars.
During the defendant's first marriage, he was employed by a company involved in the purchase and sale of helicopter parts. After leaving that job, the defendant continued on his own in CT Page 10598 this business, and early in 1988, he incorporated the business he presently operates. Though first functioning in Connecticut, the defendant moved the business to Florida in the latter part of 1988. While the parties first lived together in 1988 in Connecticut, the defendant relocated to a residence in his name in Pompano Beach, Florida, in conjunction with moving the business to Florida, and in the summer of 1989, with the promise of marriage and financial support, the plaintiff joined him at his Pompano Beach, Florida residence.
The parties resided together in Florida, first in Pompano Beach and then in Loxahatchee, until the summer of 1995 when the plaintiff, with Cira, returned to Connecticut shortly after learning that her husband was having an affair with her best friend. During their stay in Florida, the parties were married, Cira was born, and the business grew substantially. Shortly after moving to Florida, Mrs. Summit began to perform book-keeping and other ministerial services for the business. While the parties dispute the extent and value of the plaintiff's services for the business, it is clear that she assisted the defendant in the physical and book keeping aspects of starting up his Florida operation, and that, as time passed, she continued to provide part time services to the business either at the office or at home. Aside from the receipt of a small contribution to an IRA on her behalf, the plaintiff received no compensation for these employment-related efforts. Once Cira was born, the plaintiff assumed her primary care, while continuing to provide some limited services to the business. Additionally, she maintained the parties' home and their personal finances.
The helicopter parts business provided a comfortable life style for the parties. Corporate tax returns reveal that the defendant's total compensation in Fiscal Year 1993 was one hundred ten thousand ($110,000) dollars, one hundred ten thousand ($110,000) dollars in FY 1994, one hundred twelve thousand, eight hundred ($112,800) dollars in FY 1995, and seventy nine thousand four hundred forty two ($79,442) dollars in FY 1996. His current affidavit reflects an annual salary of eighty four thousand eight hundred ($84,800) dollars. In the past few years, however, the character and extent of business has changed. While the business enjoyed a substantial surge in 1994 and 1995 due, in part, to the availability and market for government surplus parts, that market has since considerably shrunk. Additionally, the advent of competition from Internet-based used-parts sales outlets has had a negative impact on the defendant's business. At this juncture, CT Page 10599 the defendant is in the process of closing down his Florida operation. He has moved a substantial portion of his inventory to other dealers where he has left it on consignment, and he is preparing to relocate to Connecticut. The defendant testified credibly that he has remained in his home in Florida only because he has been unable to sell the home without the plaintiff's approval, and that the plaintiff has refused to assent to the sale without a further agreement that she would receive a substantial portion of the proceeds from the closing.
While the precipitating factor in the parties' marital dissolution was the defendant's extra-marital affair, the marriage does not appear to have ever achieved a solid foundation. During the course of the marriage, the defendant became addicted to prescriptive medications and he abused alcohol in it's latter stages. Additionally, the parties do not appear to have shared much in common. The defendant, a non smoker, was upset that the plaintiff refused or was unable to quit smoking during her pregnancy and continued to smoke in the presence of Cira. Additionally, the defendant portrayed himself as an outdoors person who enjoyed physical exercise while he characterized the plaintiff as sedentary, more interested in watching television, shopping on a cable shopping network at home, and shopping at malls. The defendant aptly stated at trial that his extra marital affair, while perhaps not the cause of the failure of the marriage, was the straw that broke the camel's back. Certainly this last violation precipitated the plaintiff's departure from the marital home, return to Connecticut, and commencement of this action. It is clear to the court that the marriage has broken down irretrievably. Accordingly, a degree may enter dissolving the marriage on the basis of its irretrievable breakdown.
Following the plaintiff's return to Connecticut in July, 1995, she and Cira initially lived with the plaintiff's mother, then to a hotel room, and then to an apartment. Not to her credit, when the plaintiff arrived in Connecticut she wrote and attempted to cash a check to herself on the company's account in the amount of thirty thousand ($30,000) dollars. This effort was foiled, and the funds paid to the plaintiff were subsequently withdrawn from her account by the paying bank at the insistence of the defendant and the depository bank. Notwithstanding this rocky start to their separation, the defendant forwarded substantial sums to the plaintiff so that she could purchase furniture and furnishings in Connecticut, and he has provided CT Page 10600 fairly for her periodic support without court order by the payment of approximately two thousand five hundred ($2500) dollars a month. The fact that the plaintiff has incurred approximately seventy eight thousand ($78,000) dollars in debt since returning to Connecticut is a reflection of her poor judgment, and can not reasonably be attributed to any failure on the part of the defendant to provide adequately for her and Cira.
Since October, 1996, the plaintiff and Cira have lived in an apartment in Burlington, Connecticut with a monthly rent of one thousand one hundred seventy five ($1175) dollars, an increase from her previous rent in Avon of eleven hundred ($1100) dollars monthly. Cira, presently a half day student, is scheduled to be in school full time commencing in the fall of 1998. While the plaintiff has made no effort to secure outside employment since returning to Connecticut, she testified that she intends to seek employment once Cira is in school full-time. The plaintiff estimates that she will be able to earn between eight ($8) and ten ($10) dollars an hour as a book keeper, or in a similar financial position.
On March 19, 1996, the parties entered into a detailed, written custody and access agreement which was filed with the court. Both parties seek the court's adoption of that agreement with certain modifications. The terms of the parties March 19, 1996 agreement are made the terms of the parties' marital dissolution judgment. In addition, pursuant to the joint request of the parties, the court orders that neither party shall unreasonably consume alcohol while responsible for Cira's care, and neither parent shall disparage the other in Cira's presence, when in person, over the telephone, or in writing. Additionally, the defendant shall be entitled to reasonable telephone contact with Cira. Further, in order to facilitate Cira's access to her father, Mrs. Summit shall be responsible for transporting Cira to the airport to ensure the travel arrangements set forth in the parties' agreement. Finally, with respect to parenting, in the event that Mr. Summit does relocate to Connecticut, his move may be considered by the court as a material change in circumstances for purpose of reviewing the allocation of parental time with Cira.
The parties are in disagreement with respect to the amount of child support, the amount and duration of alimony, and the disposition of certain assets. CT Page 10601
With respect to the issue of child support, the court sees no reason to deviate from the application of the child support guidelines, notwithstanding the defendant's testimony that he does not, in fact, receive all of his declared compensation. Based on the court's review of the corporate tax returns, and in particular, the amount stated to be a shareholder loan, the court credits the defendant's testimony that he does not, in fact, draw his entire salary, but rather loans a portion of it back to the company for inventory purchase and operating expenses. A review of these returns, however, indicates that the shareholder loan amount has fluctuated over the past several years, demonstrating that the corporation has, at times, reimbursed the defendant for sums loaned to it. Based on the child support guidelines, and the defendant's salary of eighty four thousand, eight hundred ($84,800) dollars, the court orders the defendant to pay the plaintiff child support in the weekly amount of two hundred forty three ($243) dollars. These payments shall be made directly to the plaintiff no later than Friday of each week. In addition, the court adopts, as an order, the defendant's express willingness to pay board in the amount of fifty ($50) dollars a month for Cira's horse, and to pay reasonable sums for Cira's extra curricular activities. In this latter regard, the court is mindful that the parties share joint custody and that the defendant is thereby entitled to participate in decisions regarding the extent and appropriateness of Cira's activities.
The defendant shall maintain Cira on an appropriate medical and hospital care insurance policy, and shall pay the premiums for such policy, during Cira's minority, or until she graduates from high school, which ever event first occurs. In addition, the parties shall share equally the cost of uncovered or below-deductible health care incurred for Cira's benefit. With respect to health care, the provisions of C.G.S. 46b-84 shall apply.
As to the issue of alimony, the plaintiff reports that she needs a total of forty five hundred ($4500) dollars a month in total family support. Given her apparent spending habits, it is clear that she could, in fact, expend this sum. The court does not believe, however, that such an amount is warranted under the circumstances. In determining an appropriate alimony order, the court considers the statutory criteria as set forth in Connecticut General Statute 46b-82. While this is a relatively brief marriage, and the plaintiff, who is both young and capable, should resume full-time employment in the short term future, the court is also mindful that she left her employment in Connecticut CT Page 10602 in order to reside with the defendant in Florida, and she has had the primary responsibility for Cira's care. The court is also mindful of her services to the defendant's business in Florida, and of her non economic contributions as a home maker. Taking all relevant factors into consideration, the court orders the defendant to pay to the plaintiff the sum of four hundred ($400) dollars a week as alimony for a period of thirty six months from the date of this Memorandum. While the outside term of alimony shall not be modifiable by extension, the alimony shall terminate upon the death of either party or the remarriage of the plaintiff, and shall be subject to modification as provided by statute. In fixing the term of alimony, in addition to the statutory criteria for alimony, the court has taken into consideration Cira's school status and age with the expectation that by the end of the alimony term the plaintiff should have been able to obtain full time employment.
With respect to the issue of property settlement, the court is mindful that the total value of the defendant's assets at present is not dissimilar from their value at the end of his first marriage. The amount and character of one's pre-marital assets is, however, merely one factor for the court to consider. With respect to Summit Helicopter Parts, Inc., the court believes that the company's principal asset is its inventory, which was valued on the corporate tax return for the Fiscal Year ending June 30, 1997 at one hundred seventy five thousand ($175,000) dollars. While the defendant claims fairly that his initial inventory was derived initially from purchases made with pre-marital funds, the present inventory is the result of sales and purchases which have taken place over the past several years. During a portion of this time, the plaintiff provided services to the company without pay in addition to valuable home maker efforts. Her contributions to the marriage were meaningful. Accordingly, as a property distribution, the court orders the defendant to pay to the plaintiff the sum of seventy five thousand ($75,000) dollars as follows: The defendant may pay up to one half that amount to the plaintiff from retirement assets into an IRA in the plaintiff's name within thirty days from this decision. The defendant shall pay the balance to the plaintiff on or before December 31 1997. In determining this property distribution, the court is mindful that the defendant possesses other assets which will remain in his name alone. With respect to the property located in Loxahatchee, Florida, the court recognizes that while the property is in the defendant's name alone, Florida law limits his ability to transfer the property CT Page 10603 without his wife's consent. It is the intention of the court that she shall have no interest in this property. Therefore, the plaintiff shall execute any documents required by the State of Florida relinquishing any interest she may have in such property, and to facilitate it's transfer by the defendant to any third party and under any circumstances of his choosing. Any such document shall be prepared by the defendant, forwarded to the plaintiff, and returned executed to the defendant within fourteen days of the plaintiff's receipt.
The plaintiff shall be entitled to sole ownership of the Toyota Previa. To effectuate this order, the defendant shall execute and deliver any required registration and/or title documents to the plaintiff within thirty days of this order.
Each party shall be responsible for the liabilities shown on his and her financial affidavits, and any other liabilities incurred since their separation, and shall hold the other harmless therefrom.
With the exception of the orders made herein, each party shall be entitled to ownership of the assets each has shown on his and her financial affidavits, and each shall be entitled to ownership of the personal property each presently possesses.
In determining the disposition and allocation of assets, the court has considered the statutory criteria enumerated in C.G.S.46b-81 as well as relevant decisional law.
So long as the defendant is current with respect to his obligation to pay child support through December 31st of the tax year, he shall be entitled to claim Cira as a dependency exemption.
The defendant shall maintain life insurance on his life with a death benefit of no less than one hundred fifty thousand ($150,000) dollars for the benefit of Cira, or a trustee obligated to pay over to her, for so long as he is liable to pay child support. In addition, he shall maintain life insurance designating the plaintiff as a beneficiary with a death benefit of no less than the present value of his (then) remaining alimony obligation at the time of his death.
No award of counsel fees is made for either party. CT Page 10604
The plaintiff shall be entitled to the resumption of her birth name at her election.
Counsel for the plaintiff shall prepare the judgment file.
BISHOP, J.